## MITCHELL et al. v. UNITED STATES.

### No. 39293.

District Court, N. D. Illinois, E. D.

July 11, 1933.

Edward F. Colladay, of Washington, D. C., David O. Dunbar and Clinton Merrick, both of Chicago, Ill., and Wilton H. Wallace, of Washington, D. C., for plaintiffs.

Geo. E. Q. Johnson and Dwight H. Green, both of Chicago, Ill., for the United States.

BARNES, District Judge.

This is an action brought by the executors of the last will and testament of John J. Mitchell, deceased, against the United States of America for the recovery of federal estate taxes which were assessed and collected under the Revenue Act of 1926. The amount of the refund claimed is $31,573.82, together with interest thereon at the rate of 6 per cent. per annum from June 23, 1930.

The facts are correctly summarized in the brief of the plaintiffs, as follows:

"John J. Mitchell died on October 29, 1927, leaving a last will and testament of which plaintiffs are executors.

"Plaintiffs filed with the then Collector of Internal Revenue at Chicago their return showing federal estate tax due in respect of his estate in the sum of $175,183.17 and paid the same. This return was checked by the Internal Revenue Department, which increased the gross estate by including therein certain stock of the Texas Corporation, which decedent in his lifetime had given to his daughter, Louise J. Kellogg, and refused to allow certain deductions claimed in the original return. A deficiency of $118,840.64 was thereupon assessed. Said deficiency was based in part upon the inclusion in the gross estate of said shares of Texas Corporation stock, and upon the disallowance as a deduction of certain pledges made by decedent prior to his death, in the sum of $10,375, and upon the disallowance as a deduction of other claims against the estate in the sum of $171,674.85.

"Said deficiency ($118,840.64), plus interest thereon of $10,998.46, or a total of $129,839.10, was paid to Myrtle Tanner Blacklidge, the then Collector of Internal Revenue, who is not now in office.

"Thereafter, the Executors filed a claim for the refund of $47,140.97 of the deficiency so paid, plus a proportionate part of the interest so paid. Interest on the aggregate amount of the refund thus sought was also

claimed. Said refund claim was based upon the inclusion in the gross estate of said Texas Corporation stock and upon the disallowance as deductions of pledges and claims against the estate in the respective sums of $10,375.00 and $171,674.85. After rejection of said refund claim this suit was brought.

"Subsequent to the filing of this suit the Bureau of Internal Revenue reconsidered its prior action and eliminated from the gross estate said shares of Texas Corporation stock and allowed as a deduction said pledges aggregating $10,375.00 and made refund to the Executors of the tax and interest paid in respect of those two items. This leaves for consideration in the instant proceeding only the question of whether the Executors are entitled to deduct from the gross estate said claims against the estate in the sum of $170,-013.78. As a result of an erroneous computation in interest on one of the claims the amount originally claimed in the refund claim ($171,674.85) has been reduced to $170,013.-78.

"Decedent was chairman of the board of directors of the Illinois Merchants Trust Company, now by succession Continental Illinois National Bank and Trust Company of Chicago. Certain members of his family were largely interested as stockholders and officers in two separate corporations known as Inland Glass Manufacturing Company and Cord Tire Corporation. Said two companies, finding themselves in need of financial assistance, approached Mr. Geddes, one of the loaning officers of Illinois Merchants Trust Company, with a view to obtaining banking credit. Mr. Geddes advised officials of both said companies that since said companies were new enterprises being conducted by unseasoned executives, they should not seek banking credit but that said companies should conduct their business on capital furnished by those interested therein.

"After this conversation the officers of said companies had some negotiations with the Union Trust Company of Chicago with reference to banking connections. When the attention of decedent was called to this fact by members of his family, Mr. Mitchell expressed personal chagrin that the companies in which his family were so largely interested and of which his sons were executive officers and directors could not do their banking business with the institution of which he was chairman of the board of directors, and he expressed a desire to have said companies do business with Illinois Merchants Trust Company. As an inducement to Illinois Merchants Trust Company to make

loans to said two corporations, Mr. Mitchell stated to Mr. Geddes and to the executive officers of the Trust Company that he would not permit that institution to suffer any loss as a result of loans made to either the Cord Tire Corporation or the Inland Glass Manufacturing Company. He agreed to indemnify the Trust Company against all loss in connection with loans so made. At the instance of decedent and relying upon his indemnity agreement, the Illinois Merchants Trust Company from time to time did make loans to said two companies. From time to time as these loans came up for renewal decedent reiterated his statement that he would not permit the Bank to suffer any loss by reason of said loans.

"As security for loans made to Inland Glass Manufacturing Company, decedent also hypothecated and pledged to the Bank by a written instrument 200 shares of the capital stock of Commonwealth Edison Company which stock was included for tax purposes in decedent's gross estate at $33,400. At the time of decedent's death the Cord Tire Corporation and Inland Glass Manufacturing Company were respectively indebted to the Bank on loans of $100,000 and $60,500.

"Meanwhile, both Inland Glass Manufacturing Company and Cord Tire Corporation incurred business reverses and were unable to pay said loans. Said companies were insolvent and in such condition financially that suits against them by the Trust Company for the collection of said indebtedness to it would have been idle formality. Both companies were hopelessly insolvent. Thereupon, Illinois Merchants Trust Company filed its claims in the Probate Court of Cook County against the estate of John J. Mitchell, deceased, covering the principal amount of said loans then outstanding, plus interest thereon. After due hearing and upon consideration of the evidence adduced, said Probate Court entered judgment against the estate of John J. Mitchell, deceased, for $66,396.78 on account of liability in connection with notes of Inland Glass Manufacturing Company, and for $103,263.51 and $353.49, or an aggregate of $103,617.00, on account of liability in connection with notes of Cord Tire Corporation. The aggregate of the judgments thus entered against the estate is $170,013.78. The difference between this amount and that originally claimed as a deduction is due to an error in computing interest.

"The amount of said judgments was paid by the Executors to said Trust Company.

"The claim of Illinois Merchants Trust Company against the estate of John J. Mit-

chell, deceased, was founded upon said indemnity agreement of said decedent."

The plaintiffs contend: First, that decedent's undertaking was a direct primary obligation, and not a collateral undertaking, and therefore it was not required to be in writing; second, that the defendant has not pleaded the statute of frauds; third, that the defense of the statute of frauds is personal, and that a stranger to a contract cannot be heard to say that it is not binding; fourth, that even upon the government's own theory, the estate was entitled to deduct the sum of $66,396.74, representing the sum paid to the bank in connection with the Inland Glass Manufacturing Company notes, because the decedent signed a memorandum in writing whereby he pledged certain Texas Company stock as collateral for the payment of the indebtedness of the Inland Glass Manufacturing Company; and, fifth, that there was adequate consideration for the undertaking of decedent.

The defendant contends: First, that the promise made by decedent to stand good for the loans was a promise given orally, and was in violation of the statute of frauds of the state of Illinois; second, that there is no showing that when the probate court allowed the claims to be paid out of the estate it was done after a genuine contest, or by an agreement in which all of the parties concurred; and, third, that the claims were not incurred for an adequate and full consideration in money or money's worth, as required by section 303 of the Revenue Act of 1926 (26 US CA § 1095 and note).

The principle that one should not be penalized for being honest ought to be sufficient authority for the decision of this case in favor of the plaintiffs, but the court will briefly consider the various contentions of the parties.

The court is of the opinion, and holds, that the undertaking of the decedent was a collateral, and not a direct primary obligation.

The court is further of the opinion: (1) that the defendant in this case was not required to plead the statute of frauds in order that it might contend in this case that the undertaking of the decedent was within the statute of frauds; (2) that the undertaking of the decedent was not void, but was only voidable; and (3) that it is not bound by the order of the probate court of Cook county allowing the claims against the estate on the undertaking of the decedent.

But, finally, the court is of the opinion that the claims against the estate of the decedent were deductible under section 303 (a) (1) of the Revenue Act of 1926, 26 US CA § 1095 (a) (1). That section is as follows:

"Sec. 303. For the purpose of the tax the value of the net estate shall be determined—

"(a) In the case of a resident, by deducting from the value of the gross estate—

"(1) Such amounts for funeral expenses, administration expenses, claims against the estate, unpaid mortgages upon, or any indebtedness in respect to, property * * * to the extent that such claims, mortgages, or indebtedness were incurred or contracted bona fide and for an adequate and full consideration in money or money's worth."

The claims against the decedent were collateral, but they were not void, only voidable. They were "incurred or contracted bona fide." Nothing has been called to the court's attention which reflects upon the good faith of the transactions. The question remains as to whether the claims were incurred "for an adequate and full consideration in money or money's worth."

The decedent promised the bank to hold it harmless, and the bank, in consideration for that undertaking, advanced $170,000, approximately, *in money* to two corporations. Consideration may be benefit to promisor or detriment to promisee. In this case it was detriment to promisee, and it was money. Accordingly, the court concludes, without hesitation, that the claims were "incurred or contracted * * * for an adequate and full consideration in money or money's worth."

There will be a finding for the plaintiffs:

Counsel for the plaintiffs will present, at the opening of court on Friday, July 14, 1933, findings of fact and conclusions of law and a draft of a judgment order.